## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**BORDER STATES INDUSTRIES, INC,**

    **Plaintiff,**

**v.**                                                                 **CASE NO. 3:25cv2260-MCR-HTC**

**ERIC NISEWONGER**
**also known as**
**BO NISEWONGER, and**
**GATEWAY ELECTRICAL SUPPLY LLC,**

    **Defendants.**

_____/

## <u>ORDER</u>

Plaintiff Border States Industries, Inc. has filed a Verified Complaint alleging trade secret misappropriation claims against a former employee, Defendant Eric Nisewonger, and his current employer, Defendant Gateway Electrical Supply LLC, under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., and Florida law, Fla. Stat. § 688.002, *et seq*.  ECF No. 9.  Border States moved for a temporary restraining order, which the Court has indicated it will construe as a motion for a preliminary injunction, ECF No. 10.  In opposition to the motion, Defendants advised the Court that Border States filed a closely related case in the Southern District of Alabama four days after this case was filed, *see Border States Indus. Inc. v. Jeffrey Bradford, Jr., Glenn Ford, and Gateway Elec. Supply, LLC*, Case No. 1:25cv468-JB-MU (S.D.

Ala.), also seeking a restraining order. This case remains pending. Defendants request that this Court defer ruling until the issue of consolidation is considered, advising that the Alabama defendants had moved in that court to transfer or dismiss in favor of this first-filed action. Chief Judge Jeffrey Beaverstock of the Southern District of Alabama has stayed the Alabama case pending resolution of the "first filed rule" issues by this Court. To that end, Border States has now filed on this docket a Motion to Confirm Forum Selection, ECF No. 22, which Defendants oppose and argue instead for transfer and consolidation, ECF No. 24. Before scheduling a hearing on the injunction motion, the Court will resolve this preliminary issue. Having fully considered the Parties' arguments and the law, the Court concludes that the first-filed rule applies and transfer of the second-filed suit to this District for consolidation is appropriate.

Under the "first filed rule," when parties institute parallel or competing suits in separate courts, the court in which the first case was filed should hear the matter. *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa*., 713 F.3d 71, 78 (11th Cir. 2013) (citing M*errill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)). The rule is discretionary and "rests on principles of comity and sound judicial administration." *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 603 (5th Cir. 1999). When the cases involve "overlapping issues and

CASE NO. 3:25cv2260-MCR-HTC

parties," there is "a strong presumption" favoring proceeding in the forum of the first-filed suit. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *see also Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 262 (1910) (stating the opinion "that there was concurrent jurisdiction in the two courts, and that the substantive issues in the . . . suits were so far the same that the court first seised should proceed to the determination without interference"). The "first-filed analysis looks to the character of the suits and the parties" as well as the nature of the rights asserted to determine whether there is substantial overlap, *Collegiate Licensing*, 713 F.3d at 79, and consequently, the parties and issues need not be identical. If there is substantial overlap, it is the objecting party's burden to prove "'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel*, 430 F.3d at 1135; *see also Merrill Lynch,* 675 F.2d at 1174 ("In the absence of compelling circumstances, the court initially seized of the controversy should be the one to decide the case."). Thus, "[t]he first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or

transferred and consolidated." *Collegiate Licensing*, 713 F.3d at 78; *Mann Mfg.,*
*Inc. v. Hortex*, Inc., 439 F.2d 403, 408 (5th Cir. 1971).[1]

There is no dispute that the Court has jurisdiction over this case, and because
the case was filed before the Alabama suit, the undersigned is obligated to decide
whether the first-filed rule applies. In this case, Border States sues Nisewonger and
Gateway for misappropriation of trade secrets under federal and Florida law (Counts
I and II). The Complaint alleges that Nisewonger worked for Border States, an
electrical distributor, in its Pensacola, Florida, branch until August 5, 2025. In July
2025, his wife founded a new competing electrical supply company, Gateway, along
with Jeffrey Bradford and Glenn Ford, who still worked for Border States in its
Foley, Alabama, branch.[2] The Complaint alleges that Nisewonger began to covertly
work on behalf of Gateway, *with Bradford and Ford*, and that on his way out in
August 2025, he misappropriated Border States' trade secrets by copying customer
lists, pricing strategies, inventory data and plans, and implementation strategies and
using them to help launch Gateway. ECF No. 9 ¶¶ 4–5, 51–55. Border States
engaged a third-party forensic analysis expert "to assess the extent to which

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting the
case law of the former Fifth Circuit before October 1, 1981, as precedent in this Circuit).

[2] It is alleged that Ford resigned on July 14, 2025; Nisewonger resigned on August 5, 2025; and
Border States terminated Bradford on August 18, 2025.

Nisewonger, Bradford, and Ford misappropriated Border States trade secrets to jump start Gateway's technical expertise prior to their departures." *Id.* ¶ 54. Border States thereby discovered files accessed and potentially copied to an external storage device by Nisewonger and Bradford and sent cease and desist letters to both of them on August 29, 2025.

The Alabama suit alleges precisely the same scheme. *See* ECF No. 22–2. Border States alleges that, over the same summer, Bradford and Gateway misappropriated Border States' trade secrets under federal and Alabama law (Counts I and II), and Bradford and Ford engaged in a civil conspiracy to misappropriate Border States' trade secrets (Count III). The Alabama Complaint also alleges that Bradford became a consultant for Gateway while still working at Border States, that in the summer of 2025, that Bradford and Ford began scheming to deprive Border States of its trade secrets, and that they were working with Nisewonger in June 2025 when they began to misappropriate Border States' trade secrets and to arm Gateway with that sensitive information. ECF No. 22–2 ¶¶ 7–8. The Alabama Complaint references Nisewonger as having been involved in the misappropriation of Border States's trade secrets along with Bradford and Ford; notes that the same forensic expert's review uncovered illicit file access by Nisewonger and Bradford; and states

that on August 29, 2025, Border States served individual cease and desist letters on Ford, Bradford, and Gateway (through Nisewonger).  ECF No. 22–2 ¶¶ 62, 79–89.

A simple comparison of these complaints demonstrates substantial overlap of the facts, the claims, and the law.  Despite Border States' arguments that the Alabama suit involves different employee defendants, an additional conspiracy claim, misappropriation under Alabama law instead of Florida law, and that the alleged misappropriation involved separate downloads at different times, the overall scheme undeniably includes the same singular goal of all three employees to take Border States' trade secrets for use at Gateway.  The alleged misconduct took place within a span of two months, and Nisewonger, Bradford, and Ford all worked within 30 miles of each other.[3]  Nisewonger, while only named as a defendant in the Florida misappropriation suit, is *expressly* referenced repeatedly in both suits as working together with Bradford and Ford to misappropriate Border States' trade secrets (sensitive information of the same general nature in each case) for the benefit of his wife's company—clearly, Nisewonger is an unnamed co-conspirator in the Alabama case.  Moreover, six of the exhibits attached to the complaints are identical, including the same employee handbook, the same documents relating to Gateway, and the

---

[3] Pensacola, Florida, and Foley, Alabama, are located in separate states but only 30 miles apart.

same expert forensic declaration about the downloads.  The actions were filed in separate states within four days of one another.

Given the facts alleged, there is a real danger of inconsistency should one court conclude that the conspiracy as alleged existed and another conclude that there was no wrongdoing by these employees.  Also, it is disingenuous of Border States to argue that the misconduct of its former employees involved independent thefts when the Alabama complaint describes in detail a coordinated conspiracy between all three.  The parties' alleged conduct as well as the substantive issues substantially overlap, justifying application of the first-filed rule, and Border States has offered no compelling circumstances that would warrant an exception from the first-filed rule.  Bradford and Ford consent to personal jurisdiction in this District, eliminating any jurisdictional barrier, and the interests of economy, sound judicial administration, and the avoidance of inconsistent rulings favor transfer to this first-filed forum and consolidation into one action.

Accordingly, Border States' Motion to Confirm Forum Selection, ECF No. 22, is **GRANTED in part** and **DENIED in part**:  The Court confirms that Border States' selection of this forum for the first-filed case is appropriate but that, under the first-filed rule, the chosen forum for the second-filed suit is not appropriate.  The Court respectfully directs that the case of *Border States Indus. Inc. v. Jeffrey*

CASE NO. 3:25cv2260-MCR-HTC

*Bradford, Jr., Glenn Ford, and Gateway Elec. Supply, LLC*, Case No. 1:25cv468-JB-MU (S.D. Ala.), be transferred to this District, assigned to the undersigned, and referred to chambers for an order of consolidation.  The Defendants' request to defer ruling on the motion for a preliminary injunction until the cases are consolidated, ECF No. 16, is **GRANTED**.

The Clerk is directed to transmit a copy of this Order to the Clerk of Court for the Southern District of Alabama, to be referred to Chief Judge Jeffrey Beaverstock, and to refer the matter to the undersigned's chambers once the transfer to this District is complete.

**DONE AND ORDERED** this 16th day of January 2026.


*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**


CASE NO. 3:25cv2260-MCR-HTC